Charles H. Chevalier
Michael V. Caracappa
Christian Villatoro
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102-5310
cchevalier@fbtgibbons.com
mcaracappa@fbtgibbons.com
cvillatoro@fbtgibbons.com

*Of Counsel*:

Vinita C. Ferrera
Emily R. Whelan
Timothy A. Cook
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Vinita.Ferrera@wilmerhale.com
Emily.Whelan@wilmerhale.com
Tim.Cook@wilmerhale.com

*Attorneys for Plaintiff Gilead Sciences, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>ZYDUS LIFESCIENCES GLOBAL FZE, ZYDUS PHARMACEUTICALS (USA), INC., and ZYDUS LIFESCIENCES LIMITED,<br><br>*Defendants*. | Civil Action No. 26-11157 |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its attorneys, hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, against Defendants Zydus Lifesciences Global FZE

("Zydus FZE"), Zydus Pharmaceuticals (USA) Inc. ("Zydus USA"), and Zydus Lifesciences Limited ("Zydus Ltd.") (together, "Zydus").

2. Gilead is a leading research-based pharmaceutical company that discovers, develops, and brings to market transformative medicines in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus ("HBV"), hepatitis C virus, liver diseases, serious cardiovascular and respiratory diseases, and cancer.

3. This case relates to Gilead's DESCOVY® and VEMLIDY® products, which have benefited hundreds of thousands of people and are recognized as highly successful medicines in their respective classes.

4. Approved by the U.S. Food and Drug Administration ("FDA") in 2016, DESCOVY® has been proven safe and effective for, among other things, HIV treatment and HIV prevention in at-risk populations. DESCOVY® contains two main components—tenofovir alafenamide ("TAF") and emtricitabine ("FTC," or simply "F"). Both have contributed to the medicine's clinical and commercial success.

5. VEMLIDY® was also approved by FDA in 2016. It has been proven safe and effective for treatment of chronic HBV infection in adults with compensated liver disease. TAF is the main component in VEMLIDY®, and it has contributed to the medicine's clinical and commercial success.

6. Gilead's extensive research and development program for DESCOVY® and VEMLIDY® led to numerous groundbreaking inventions. For example, Gilead invented several forms of TAF, including TAF hemifumarate, TAF monofumarate, and TAF sesquifumarate. Gilead's invention of TAF hemifumarate is protected by U.S. Patent Nos. 8,754,065 and 9,296,769 (the "TAF Hemi Patents"), which, with applicable pediatric exclusivity, expire in

February 2033. The TAF Hemi Patents are listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for DESCOVY® and VEMLIDY®. Gilead's invention of TAF sesquifumarate resulted in U.S. Patent No. 9,777,028 (the "TAF Sesqui Patent"), which expires in June 2036.

7. Gilead also invented novel chemical methods to produce TAF in an efficient, reliable, and commercially feasible manner. That work resulted in U.S. Patent Nos. 8,664,386, 9,029,534, 9,346,841, and 9,676,804 (the "TAF Process Patents"), which expire in October 2032.

8. Gilead also invented novel formulations containing TAF, FTC, and other components for the treatment and prevention of HIV, as well as methods of treating patients with those patented formulations. These inventions are protected by U.S. Patent Nos. 12,629,338, 12,648,911, 12,661,323, and 12,678,408 (the "TAF Formulation Patents"), which expire in June 2036. The TAF Formulation Patents are also listed in FDA's Orange Book for DESCOVY®.

9. The TAF Hemi Patents, the TAF Sesqui Patent, the TAF Process Patents, and the TAF Formulation Patents are, together, the "Patents-in-Suit."

10. Zydus FZE—which, on information and belief, is acting in concert with Zydus Ltd. and Zydus USA—is requesting FDA approval to market two TAF-containing products prior to the expiration of the Orange-Book-listed TAF Hemi Patents and certain of the TAF Formulation Patents, as well as the other Patents-in-Suit.

11. On information and belief, Zydus FZE submitted New Drug Application No. 220246 ("Zydus's F/TAF 505(b)(2) Application") to FDA pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FDCA") referencing Gilead's New Drug Application for DESCOVY®. Zydus's F/TAF 505(b)(2) Application seeks approval for Zydus FZE to market emtricitabine/tenofovir alafenamide oral tablets in 200 mg/ 25 mg base strength ("Zydus's F/TAF

505(b)(2) Product"). On information and belief, Zydus's F/TAF 505(b)(2) Application included a certification pursuant to 21 U.S.C. § 355(b)(2)(A)(iv) (a "Paragraph IV Certification") for the TAF Hemi Patents and at least three of the TAF Formulation Patents.

12. On information and belief, Zydus FZE submitted New Drug Application No. 220245 ("Zydus's TAF 505(b)(2) Application") to FDA pursuant to section 505(b)(2) of the FDCA referencing Gilead's New Drug Application for VEMLIDY®. Zydus's TAF 505(b)(2) Application seeks approval for Zydus FZE to market tenofovir alafenamide oral tablets in 25 mg base strength ("Zydus's TAF 505(b)(2) Product"). On information and belief, Zydus's TAF 505(b)(2) Application included a Paragraph IV Certification for the TAF Hemi Patents.

13. On information and belief, Zydus USA is the U.S. regulatory agent for Zydus's F/TAF 505(b)(2) Application and Zydus's TAF 505(b)(2) Application (together, "Zydus's 505(b)(2) Applications").

14. On information and belief, Zydus FZE and Zydus USA are wholly owned subsidiaries of Zydus Ltd. and operate under its direction and control, including with respect to making, using, offering for sale, or selling Zydus's F/TAF 505(b)(2) Product and Zydus's TAF 505(b)(2) Product (together, "Zydus's 505(b)(2) Products") in the United States, or by importing it into the United States.

15. On information and belief, Zydus Ltd., Zydus FZE, and Zydus USA acted in concert to prepare and submit Zydus's 505(b)(2) Applications.

16. On information and belief, Zydus Ltd., Zydus FZE, and Zydus USA know and intend that upon approval of Zydus's F/TAF 505(b)(2) Application, Zydus Ltd., Zydus FZE, and/or Zydus USA will manufacture Zydus's F/TAF 505(b)(2) Product and will import Zydus's F/TAF 505(b)(2) Product into the United States. On information and belief, Zydus USA, acting

as an agent of Zydus FZE, will directly or indirectly market, sell, and distribute Zydus's F/TAF 505(b)(2) Product throughout the United States, including in New Jersey.

17. On information and belief, Zydus Ltd., Zydus FZE, and Zydus USA know and intend that upon approval of Zydus's TAF 505(b)(2) Application, Zydus Ltd., Zydus FZE, and/or Zydus USA will manufacture Zydus's TAF 505(b)(2) Product and will import Zydus's TAF 505(b)(2) Product into the United States. On information and belief, Zydus USA, acting as an agent of Zydus FZE, will directly or indirectly market, sell, and distribute Zydus's TAF 505(b)(2) Product throughout the United States, including in New Jersey.

18. In view of Zydus's Paragraph IV Certifications and information about Zydus's 505(b)(2) Products that is currently available to Gilead, Gilead brings this action against Zydus for infringement of the Patents-in-Suit.

19. On information and belief, Zydus FZE, Zydus USA, and Zydus Ltd., acting in concert, have infringed one or more claims of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Formulation Patents under 35 U.S.C. § 271(e)(2)(A) by filing Zydus's F/TAF 505(b)(2) Application and seeking FDA approval of Zydus's F/TAF 505(b)(2) Application prior to the expiration of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Formulation Patents. Additionally, on information and belief, Zydus FZE, Zydus USA, and Zydus Ltd., acting in concert, will imminently infringe one or more claims of the Patents-in-Suit under 35 U.S.C. §§ 271(a), (b), (c), and/or (g) by making, using, offering for sale, or selling Zydus's F/TAF 505(b)(2) Product in the United States, or by importing it into the United States.

20. On information and belief, Zydus FZE, Zydus USA, and Zydus Ltd., acting in concert, have infringed one or more claims of the TAF Hemi Patents and TAF Sesqui Patent under 35 U.S.C. § 271(e)(2)(A) by filing Zydus's TAF 505(b)(2) Application seeking FDA

approval of Zydus's TAF 505(b)(2) Application prior to the expiration of the TAF Hemi Patents and TAF Sesqui Patent. Additionally, on information and belief, Zydus FZE, Zydus USA, and Zydus Ltd., acting in concert, will imminently infringe one or more claims of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Process Patents under 35 U.S.C. §§ 271(a), (b), and/or (g) by making, using, offering for sale, or selling Zydus's TAF 505(b)(2) Product in the United States, or by importing it into the United States.

## PARTIES

21. Gilead is a corporation organized and existing under the laws of Delaware, having a principal place of business at 333 Lakeside Drive, Foster City, California 94404.

22. Gilead's mission is to discover, develop, and deliver innovative therapeutics for people with life-threatening diseases, including treatments and preventatives for HIV infection and HBV. Gilead sells DESCOVY® and VEMLIDY® in this judicial district and throughout the United States.

23. On information and belief, Zydus FZE is a corporation organized and existing under the laws of the United Arab Emirates, with its principal place of business at FZJO B2601, Jebel Ali Free Zone Dubai, United Arab Emirates.

24. On information and belief, Zydus USA is a corporation organized and existing under the laws of New Jersey and its principal place of business is located at 73 Route 31 N., Pennington, New Jersey 08534.

25. On information and belief, Zydus Ltd. is a corporation organized and existing under the laws of the Republic of India and its principal place of business is located at Zydus Corporate Park, Scheme No. 63, Survey No. 536, Khoraj (Gandhinagar), Nr. Vaishnodevi Circle, S.G. Highway, Ahmedabad 382481, Gujarat India.

## JURISDICTION & VENUE

26. This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 *et seq.*, and this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

27. The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and justiciable controversy exists between Gilead and Zydus of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-in-Suit.

28. This Court has personal jurisdiction over Zydus FZE because, among other things, Zydus FZE has committed, contributed to, and/or participated in acts of patent infringement under 35 U.S.C. § 271(e)(2) and, on information and belief, intends to engage in a future course of conduct that includes acts of patent infringement under 35 U.S.C. § 271(a), (b), (c), and/or (g) including in New Jersey. These acts have led and will lead to foreseeable harm and injury to Gilead. For example, on information and belief, following approval of Zydus's 505(b)(2) Applications, Zydus FZE will, either directly or indirectly through affiliated companies or agents, make use, import, sell, and/or offer for sale Zydus's 505(b)(2) Products in the United States, including in New Jersey, prior to expiration of the Patents-in-Suit.

29. This Court also has personal jurisdiction over Zydus FZE by virtue of, among other things, its systematic and continuous contacts with this jurisdiction. On information and belief, Zydus FZE, either directly or through its subsidiaries, agents, and/or affiliates, regularly and continuously transacts business within New Jersey, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including New Jersey. On information and belief, Zydus FZE

derives substantial revenue from the sale of those products in New Jersey and has availed itself of the privilege of conducting business within New Jersey.

30. On information and belief, Zydus FZE markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates, including Zydus USA, a New Jersey corporation that is registered to do business and has appointed an agent to accept service in New Jersey.

31. This Court also has personal jurisdiction over Zydus FZE pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Gilead's claims arise under federal law; (b) Zydus FZE is a foreign company not subject to personal jurisdiction in the courts of general jurisdiction of any state; and (c) Zydus FZE has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Zydus FZE satisfies due process.

32. Further, this Court has personal jurisdiction over Zydus FZE because Zydus FZE has previously been sued in this District and has not challenged personal jurisdiction, and Zydus FZE has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Chemocentryx, Inc. v. Zydus Pharms. (USA) Inc.*, C.A. No. 26-556, ECF No. 48 (D.N.J. Apr. 27, 2026) (ANDA litigation in which Zydus FZE, Zydus USA, and Zydus Ltd. were defendants); *Genentech, Inc. v. Natco Pharma Ltd.*, C.A. No. 24-10567, ECF No. 30 (D.N.J. Feb. 26, 2025) (same); *Jazz Pharms. Ir. Ltd. v. Sandoz, Inc.*, C.A. No. 24-9110, ECF No. 52 (D.N.J. Dec. 16, 2024) (same).

33. This Court also has personal jurisdiction over Zydus FZE because Zydus FZE has filed Zydus's 505(b)(2) Applications seeking approval from FDA to market and sell Zydus's

505(b)(2) Products throughout the United States, including in New Jersey. On information and belief, Zydus FZE intends to commercially manufacture, use, offer to sell, and sell Zydus's 505(b)(2) Products upon receiving FDA approval. On information and belief, if approved, Zydus's 505(b)(2) Products would, among other things, be marketed, distributed, and sold in New Jersey, and/or prescribed by physicians practicing in and dispensed by pharmacies located in New Jersey, all of which would have a substantial effect on New Jersey. By filing Zydus's 505(b)(2) Applications, Zydus FZE has made clear that it intends to use its distribution channels to direct sales of Zydus's 505(b)(2) Products into New Jersey.

34. This Court has personal jurisdiction over Zydus USA, at least because Zydus USA is a corporation organized and existing under the laws of New Jersey.

35. Further, this Court has personal jurisdiction over Zydus USA because Zydus USA has previously been sued in this District and has not challenged personal jurisdiction, and Zydus USA has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Chemocentryx, Inc. v. Zydus Pharms. (USA) Inc.*, C.A. No. 26-556, ECF No. 48 (D.N.J. Apr. 27, 2026) (ANDA litigation in which Zydus FZE, Zydus USA, and Zydus Ltd. were defendants); *Genentech, Inc. v. Natco Pharma Ltd.*, C.A. No. 24-10567, ECF No. 30 (D.N.J. Feb. 26, 2025) (same); *Jazz Pharms. Ir. Ltd. v. Sandoz, Inc.*, C.A. No. 24-9110, ECF No. 52 (D.N.J. Dec. 16, 2024) (same). Upon information and belief, Zydus USA has also availed itself of the legal protections of this District by having filed suit in this jurisdiction. *See, e.g.*, *Zydus Pharms. (USA), Inc. v. Novartis Pharms. Corp.*, C.A. No. 19-21259, ECF No. 1 (D.N.J. Dec. 10, 2019) (ANDA litigation in which Zydus USA is the plaintiff); *Zydus Pharms. (USA) Inc. v. Gilead Scis., Inc.*, C.A. No. 14-7080, ECF No. 1 (D.N.J. Nov. 11, 2014) (antitrust

litigation in which Zydus USA and Zydus Ltd., under its former name Cadila Healthcare Limited, were plaintiffs).

36. This Court has personal jurisdiction over Zydus Ltd. because, among other things, Zydus Ltd. has committed, contributed to, and/or participated in acts of patent infringement under 35 U.S.C. § 271(e)(2) and, on information and belief, intends to engage in a future course of conduct that includes acts of patent infringement under 35 U.S.C. § 271(a), (b), (c), and/or (g) including in New Jersey. These acts have led and will lead to foreseeable harm and injury to Gilead. For example, on information and belief, following approval of Zydus's 505(b)(2) Applications, Zydus Ltd. will, either directly or indirectly through affiliated companies or agents, make, use, import, sell, and/or offer for sale Zydus's 505(b)(2) Products in the United States, including in New Jersey, prior to expiration of the Patents-in-Suit.

37. This Court also has personal jurisdiction over Zydus Ltd. by virtue of, among other things, its systematic and continuous contacts with this jurisdiction. On information and belief, Zydus Ltd., either directly or through its subsidiaries, agents, and/or affiliates, regularly and continuously transacts business within New Jersey, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including New Jersey. On information and belief, FDA has approved more than 70 of Zydus Ltd.'s applications seeking to market and sell pharmaceutical products throughout the United States, including in New Jersey. On information and belief, Zydus Ltd. derives substantial revenue from the sale of those products in New Jersey and has availed itself of the privilege of conducting business within New Jersey.

38. On information and belief, Zydus Ltd. markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates, including Zydus USA, a New Jersey

corporation that is registered to do business and has appointed an agent to accept service in New Jersey.

39. This Court also has personal jurisdiction over Zydus Ltd. pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Gilead's claims arise under federal law; (b) Zydus Ltd. is a foreign company not subject to personal jurisdiction in the courts of general jurisdiction of any state; and (c) Zydus Ltd. has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Zydus Ltd. satisfies due process.

40. Further, this Court has personal jurisdiction over Zydus Ltd. because Zydus Ltd. has previously been sued in this District and has not challenged personal jurisdiction, and Zydus Ltd. has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Chemocentryx, Inc. v. Zydus Pharms. (USA) Inc.*, C.A. No. 26-556, ECF No. 48 (D.N.J. Apr. 27, 2026) (ANDA litigation in which Zydus FZE, Zydus USA, and Zydus Ltd. were defendants); *Genentech, Inc. v. Natco Pharma Ltd.*, C.A. No. 24-10567, ECF No. 30 (D.N.J. Feb. 26, 2025) (same); *Jazz Pharms. Ir. Ltd. v. Sandoz, Inc.*, C.A. No. 24-9110, ECF No. 52 (D.N.J. Dec. 16, 2024) (same). Upon information and belief, Zydus Ltd. has also availed itself of the legal protections of this District by having filed suit in this jurisdiction. *See, e.g.*, *Zydus Pharms. (USA) Inc. v. Gilead Scis., Inc.*, C.A. No. 14-7080, ECF No. 1 (D.N.J. Nov. 11, 2014) (antitrust litigation in which Zydus Ltd., under its former name Cadila Healthcare Limited, and Zydus USA were plaintiffs).

41. This Court also has personal jurisdiction over Zydus Ltd. because, on information and belief, Zydus Ltd. directed the filing of Zydus's 505(b)(2) Applications seeking approval

from FDA to market and sell Zydus's 505(b)(2) Products throughout the United States, including in New Jersey. On information and belief, Zydus Ltd. intends to commercially manufacture, use, offer to sell, and sell Zydus's 505(b)(2) Products upon receiving FDA approval. On information and belief, if approved, Zydus's 505(b)(2) Products would, among other things, be marketed, distributed, and sold in New Jersey, and/or prescribed by physicians practicing in and dispensed by pharmacies located in New Jersey, all of which would have a substantial effect on New Jersey. By directing the filing of Zydus's 505(b)(2) Applications, Zydus Ltd. has made clear that it intends to use its distribution channels to direct sales of Zydus's 505(b)(2) Products into New Jersey.

42. Venue is proper in this Court as to Zydus FZE and Zydus Ltd. under 28 U.S.C. § 1391(c)(3) because Zydus FZE and Zydus Ltd. are foreign corporations and may be sued in any judicial district in the United States in which they are subject to the court's personal jurisdiction, including in this District.

43. Venue is proper in this Court as to Zydus USA under 28 U.S.C. § 1400(b) because, among other things, Zydus USA is incorporated in New Jersey, and, on information and belief, Zydus USA has committed acts of infringement, including the preparing of Zydus's 505(b)(2) Applications, in this district and has a regular and established place of business in this district.

**BACKGROUND**

44. Gilead developed a groundbreaking HIV antiviral called tenofovir in the 1990s. Tenofovir is a potent HIV antiviral, but it is not viable as an oral medicine. To bring this breakthrough to patients, Gilead chemists needed to find ways to change tenofovir to make it orally bioavailable while retaining its remarkable activity. Gilead did this by creating and

studying many prodrugs of tenofovir—molecules that can be absorbed by the body and then convert to tenofovir once in the body or in target cells.

45. TAF is one of the tenofovir prodrugs that Gilead invented. TAF has the following chemical structure:




Notably, TAF has three stereocenters, including one at its phosphorus atom. This makes TAF difficult to manufacture at commercially viable levels.

46. Gilead continued to study TAF and discovered that it was remarkably effective. Gilead found that TAF was ten times more active than another leading tenofovir prodrug (called TDF) and exhibited a surprising and unexpected ability to accumulate tenofovir preferentially in the cells that serve as an HIV reservoir.

47. Gilead began developing TAF as a clinical candidate in 2010. At that point, Gilead needed a commercially feasible way to make TAF. One way Gilead solved this problem was to invent a new manufacturing technique for TAF. Gilead discovered a synthetic route to TAF that substantially increased the useful yield for the TAF manufacturing process and made it commercially feasible.

48. A second way that Gilead solved this problem was to study many different multi-component forms of TAF, such as salts, cocrystals, hydrates and solvates. Gilead discovered a form of TAF called TAF monofumarate ("TAF Mono"), which is a composition in which one molecule of TAF is associated with one molecule of fumaric acid. It also discovered a form

called TAF hemifumarate ("TAF Hemi")—a composition in which two molecules of TAF are associated with one molecule of fumaric acid. TAF Hemi is the TAF fumarate drug substance in DESCOVY® and VEMLIDY®.

49. Even after Gilead overcame the initial challenges in developing forms of TAF that were safe, effective, and commercially feasible, Gilead sought to develop a pharmaceutical formulation that could safely and effectively deliver TAF to patients.

50. FTC is another HIV antiviral medication that was developed and commercialized by Gilead. Gilead scientists discovered that combination therapy with TAF and FTC may be more effective and have reduced side effects compared to either drug alone, as well as be more convenient for patients, and they set out to develop a combination tablet containing both TAF and FTC as active ingredients.

51. TAF (in its hemifumarate form) was first approved by FDA as a component of Gilead's GENVOYA®, which is indicated for HIV treatment. Today, TAF is a component of six FDA-approved medicines.[1] TAF-containing medicines have become a preferred treatment option for HIV and hepatitis B virus in many patient populations. It is estimated that millions of people with HIV worldwide have used TAF-based medicines.

52. DESCOVY® is one of those TAF-based medicines. Gilead holds approved NDA No. 208215 for DESCOVY® tablets in two strengths: 200 mg of emtricitabine and 25 mg of TAF base equivalents, and 120 mg of emtricitabine and 15 mg of TAF base equivalents. DESCOVY® was approved for HIV treatment in 2016 and HIV prevention (pre-exposure prophylaxis, or PrEP) in 2019.

[1] Many HIV medicines are fixed-dose combinations—single tablets that contain multiple active components, like TAF. TAF is a component in GENVOYA®, ODEFSEY®, DESCOVY®, BIKTARVY®, and SYMTUZA® fixed-dose combination medicines, as well as VEMLIDY®.

53. In developing this combination therapy, Gilead scientists realized that formulating TAF and FTC in a tablet that would remain stable, without degradation of either active ingredient, would be a considerable challenge. After researching and testing numerous formulations, Gilead scientists discovered that in tablets containing both TAF and FTC, such as those in which TAF and FTC are about 40% to 75% by weight of the tablet, there is a relationship between the concentration of TAF and the stability of TAF in the tablet. They accordingly formulated what became DESCOVY® with a relatively high concentration of TAF based on the total tablet weight. Gilead scientists also discovered that it was possible to formulate tablets containing TAF and FTC that remained stable while reducing the total number of non-pharmaceutically active excipients. That formulation work ultimately led to the development of DESCOVY®.

54. VEMLIDY® is another TAF-based medicine. Gilead holds approved NDA No. 208464 for VEMLIDY® tablets for 25 mg of TAF base equivalents. VEMLIDY® was FDA-approved for the treatment of chronic HBV infection in adults with compensated liver disease in 2016.

**PATENTS-IN-SUIT**

55. On June 17, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,754,065 (the "'065 Patent"), titled "Tenofovir Alafenamide Hemifumarate." A true and correct copy of the '065 Patent is attached hereto as Exhibit A. The claims of the '065 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity). Gilead is the assignee of the '065 Patent and has the right to enforce it.

56. On March 29, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,296,769 (the "'769 Patent"), titled "Tenofovir Alafenamide Hemifumarate." A

true and correct copy of the ’769 Patent is attached hereto as Exhibit B. The claims of the ’769 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity). Gilead is the assignee of the ’769 Patent and has the right to enforce it.

57. On October 3, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,777,028 (the "’028 Patent"), titled "Co-Crystals, Salts and Solid Forms of Tenofovir Alafenamide." A true and correct copy of the ’028 Patent is attached hereto as Exhibit C. The claims of the ’028 Patent are valid, enforceable, and will not expire until June 13, 2036. Gilead is the assignee of the ’028 Patent and has the right to enforce it.

58. On March 4, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,664,386 (the "’386 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the ’386 Patent is attached hereto as Exhibit D. The claims of the ’386 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the ’386 Patent and has the right to enforce it.

59. On May 12, 2015, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,029,534 (the "’534 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the ’534 Patent is attached hereto as Exhibit E. The claims of the ’534 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the ’534 Patent and has the right to enforce it.

60. On May 24, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,346,841 (the "’841 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the ’841 Patent is attached hereto as Exhibit F. The claims of the ’841 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the ’841 Patent and has the right to enforce it.

61. On June 13, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,676,804 (the "'804 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the '804 Patent is attached hereto as Exhibit G. The claims of the '804 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '804 Patent and has the right to enforce it.

62. On May 19, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,629,338 (the "'338 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '338 Patent is attached hereto as Exhibit H. The claims of the '338 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '338 Patent and has the right to enforce it.

63. On June 9, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,648,911 (the "'911 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '911 Patent is attached hereto as Exhibit I. The claims of the '911 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '911 Patent and has the right to enforce it.

64. On June 23, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,661,323 (the "'323 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '323 Patent is attached hereto as Exhibit J. The claims of the '323 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '323 Patent and has the right to enforce it.

65. On July 14, 2026, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 12,678,408 (the "'408 Patent"), titled "Pharmaceutical Formulations Comprising Tenofovir Alafenamide and Emtricitabine." A true and correct copy of the '408 Patent is attached hereto as Exhibit K. The claims of the '408 Patent are valid, enforceable, and will not expire until June 29, 2036. Gilead is the assignee of the '408 Patent and has the right to enforce it.

66. At least one claim of each of the TAF Hemi Patents and TAF Formulation Patents covers DESCOVY® or approved methods of using DESCOVY®.

67. At least one claim of each of the TAF Hemi Patents covers VEMLIDY® or approved methods of using VEMLIDY®.

68. Gilead's commercial process for manufacturing DESCOVY® and VEMLIDY® also practices at least one claim of the TAF Process Patents.

**ZYDUS'S INFRINGEMENT OF THE PATENTS-IN-SUIT**

69. On information and belief, Zydus FZE submitted its 505(b)(2) Applications seeking FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of Zydus's 505(b)(2) Products in or into the United States before the expiration of each Patent-In-Suit.

70. By letter dated July 16, 2026, Zydus USA notified Gilead that Zydus FZE had submitted Zydus's F/TAF 505(b)(2) Application to FDA, seeking approval to market Zydus's F/TAF 505(b)(2) Product in reliance on Gilead's investments, inventions, and data ("Zydus's F/TAF Notice Letter").

71. By submitting Zydus's F/TAF 505(b)(2) Application and as stated in Zydus's F/TAF Notice Letter, Zydus FZE has represented to FDA that Zydus's F/TAF 505(b)(2) Product

contains FTC/TAF in 200 mg/25 mg base, which is one of the same dosages as DESCOVY®; that it desires for FDA to rely on Gilead's DESCOVY® data to approve Zydus's F/TAF 505(b)(2) Product; and that Zydus's F/TAF 505(b)(2) Application contains data as required to show that Zydus's F/TAF 505(b)(2) Product has the same bioavailability as, and/or is bioequivalent to, DESCOVY®.

72. Upon information and belief, Zydus's F/TAF 505(b)(2) Application included a Paragraph IV Certification with respect to the TAF Hemi Patents and to the TAF Formulation Patents, except for the '408 Patent. According to Zydus's F/TAF Notice Letter, Zydus FZE has alleged to FDA that "in the opinion of Zydus and to the best of its knowledge, no valid and enforceable claim of the '065, '769, '338, '911, and '323 patents will be infringed by the importation, manufacture, use, sale of, or offer to sell within the United States" of Zydus's F/TAF 505(b)(2) Product, and that Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, seeks approval to engage in the commercial manufacture, use, and sale of its F/TAF 505(b)(2) Product in the United States before the TAF Hemi Patents and at least the '338, '911, and '323 Patents expire.

73. Zydus's F/TAF Notice Letter does not set forth any alleged bases for non-infringement of the '338, '911, or '323 Patents.

74. Upon information and belief, any future notice letter by Zydus regarding the '408 Patent will likewise not set forth any alleged bases for non-infringement of at least one claim of the '408 Patent, which is in the same family as the '338, '911, and '323 Patents.

75. By letter dated July 29, 2026, Zydus USA notified Gilead that Zydus FZE had submitted Zydus's TAF 505(b)(2) Application to FDA, seeking approval to market the Zydus's

TAF 505(b)(2) Product in reliance on Gilead's investments, inventions, and data ("Zydus's TAF Notice Letter"; together with Zydus's F/TAF Notice Letter, "Zydus's Notice Letters").

76. By submitting Zydus's TAF 505(b)(2) Application and as stated in Zydus's TAF Notice Letter, Zydus FZE has represented to FDA that Zydus's TAF 505(b)(2) Product contains TAF in 25 mg base, which is the same dosage as VEMLIDY®; that it desires for FDA to rely on Gilead's VEMLIDY® data to approve Zydus's TAF 505(b)(2) Product; and that Zydus's TAF 505(b)(2) Application contains data as required to show that Zydus's TAF 505(b)(2) Product has the same bioavailability as and/or is bioequivalent to VEMLIDY®.

77. Upon information and belief, Zydus's TAF 505(b)(2) Application included a Paragraph IV Certification with respect to the TAF Hemi Patents. According to Zydus's TAF Notice Letter, Zydus USA has stated that Zydus FZE has alleged to FDA that "in the opinion of Zydus and to the best of its knowledge, no valid and enforceable claim of the '065 [and] '769 … patents will be infringed by the importation, manufacture, use, sale of, or offer to sell within the United States" of Zydus's TAF 505(b)(2) Product, and that Zydus seeks approval to engage in the commercial manufacture, use, and sale of Zydus's TAF 505(b)(2) Product in the United States before the TAF Hemi Patents expire.

78. Despite making these serious allegations, Zydus's Notice Letters failed to comply with the Hatch-Waxman Act's requirements. For example, FDA's regulations require a notice of a Paragraph IV Certification for a 505(b)(2) application to include "[t]he established name, if any, as defined in section 502(e)(3) of the Federal Food, Drug, and Cosmetic Act, of the proposed drug product," 21 C.F.R. § 314.52(c)(3), and "[t]he active ingredient, strength, and dosage form of the proposed drug product," *id.* § 314.52(c)(4). Zydus's F/TAF Notice Letter simply identified Zydus's F/TAF 505(b)(2) Product as "emtricitabine and tenofovir alafenamide

tablets" and the strength as "200 mg/25 mg" base. Zydus's F/TAF Notice Letter does not specifically identify the active ingredient of Zydus's F/TAF Product. Similarly, Zydus's TAF 505(b)(2) Notice Letter simply identified Zydus's TAF 505(b)(2) Product as "tenofovir alafenamide tablets" and the strength as "25 mg" base. Zydus's TAF 505(b)(2) Notice Letter does not specifically identify the active ingredient of Zydus's TAF Product. Because Zydus's Notice Letters failed to comply with the Hatch-Waxman Act and implementing regulations, Zydus has prejudiced Gilead's ability to fully assess evidence of Zydus's infringement before the expiration of the Hatch-Waxman Act's 45-day period to bring an infringement suit. Gilead reserves its right to contest the adequacy of Zydus's Notice Letters and to request tolling of the 30-month stay of FDA approval of Zydus's 505(b)(2) Applications until Gilead receives compliant Notice Letters, but Gilead brings this suit now, within 45 days of receipt of the first of Zydus's Notice Letters, out of an abundance of caution.

79. Zydus's Notice Letters also imposed unreasonable restrictions on Gilead's ability to fully assess evidence of Zydus's infringement. Although Zydus's Notice Letters included Offers of Confidential Access ("OCAs"), those OCAs did not comply with the Hatch-Waxman Act. Under 21 U.S.C. § 355(c)(3)(D)(i)(III), an OCA "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." Zydus's OCAs contained unreasonable restrictions above and beyond those that would apply under a protective order. For example, Zydus's OCAs included an overbroad prosecution bar for "patents related to emtricitabine and tenofovir alafenamide," extending the scope of the prosecution bar to medicines that are not at issue. This is inconsistent with prior protective orders entered in litigation concerning the same patents. *See,*

*e.g.*, *Gilead Scis., Inc. v. Cipla Ltd.*, C.A. No. 26-149, ECF No. 40 (D. Del. Aug. 4, 2026); *Gilead Scis., Inc. v. Apotex, Inc.*, C.A. No. 20-189, ECF No. 108 (D. Del. July 21, 2020).

80. Nonetheless, on information and belief based on statements in Zydus's Notice Letters and publicly available information, Zydus's 505(b)(2) Applications seek approval for products containing a form of TAF fumarate.

81. Zydus's Notice Letters repeatedly attempt to cast their unidentified products as outside the scope of the TAF Hemi Patents' claims by discussing the scope of the claims relative to possible TAF fumarate forms. For example, Zydus's F/TAF Notice Letter alleges that "Zydus's [F/TAF 505(b)(2) Product] will not literally infringe claim 1 [of the '065 Patent] at least because Zydus's [F/TAF 505(b)(2) Product] does not contain tenofovir alafenamide hemifumarate." It also alleges that Gilead "is estopped from asserting that claim 1 encompasses tenofovir alafenamide monofumarate" because Gilead "impliedly disclaimed or dedicated to the public tenofovir alafenamide monofumarate." Similarly, Zydus's TAF Notice Letter alleges that "Zydus's [TAF 505(b)(2) Product] will not literally infringe claim 1, at least because Zydus's [TAF 505(b)(2) Product] does not contain tenofovir alafenamide hemifumarate" and that Gilead "is estopped from asserting that claim 1 encompasses tenofovir alafenamide monofumarate" because, among other things, Gilead "impliedly disclaimed or dedicated to the public tenofovir alafenamide monofumarate." These statements indicate that Zydus believes itself to be making products that contain a form of TAF fumarate, although Zydus attempts to obscure this information by not expressly saying so and forcing Gilead to make inferences based on the information presently available to it.

82. Zydus's Notice Letters also do not identify any basis for non-infringement of dependent claims that expressly require TAF fumarate or TAF hemifumarate (e.g., claims 18 and

19 of the ’388 Patent). Zydus does not contend that its proposed products lack a form of TAF fumarate, nor does it explain how Zydus’s 505(b)(2) Products could avoid meeting the dependent claims’ limitations directed to TAF fumarate and TAF hemifumarate. Zydus’s failure to articulate any non-infringement position as to those claims indicates either that Zydus believes itself to be making a product that satisfies those claim limitations or that it has deliberately declined to disclose information necessary for Gilead to fully assess infringement based on the limited information presently available.

83. On information and belief based on a representation made by Zydus’s counsel to Gilead’s counsel, Zydus’s 505(b)(2) Applications rely on a Drug Master File (“DMF”) for the TAF component in Zydus’s 505(b)(2) Products. The FDA’s public listing of DMFs for the second quarter of 2026 does not identify any entity as holding an active DMF for any form of TAF other than a TAF fumarate, further indicating that Zydus’s 505(b)(2) Products will include a form of TAF fumarate.

84. On information and belief, the processes used to prepare TAF fumarates, including, in particular, TAF monofumarate, can produce other fumarate forms as well, including TAF hemifumarate and TAF sesquifumarate. For example, European Patent No. 3,411,378 B1 describes a method for the “[p]reparation of tenofovir alafenamide monofumarate” that yields “a mixture of tenofovir alafenamide monofumarate form I and tenofovir alafenamide hemifumarate.” Therefore, on information and belief based on the information presently known to Gilead, Zydus’s 505(b)(2) Products will contain multiple forms of TAF fumarate, including TAF monofumarate, TAF hemifumarate, and TAF sesquifumarate. Gilead requires discovery from Zydus, including samples of Zydus’s 505(b)(2) Products, in order to assess the exact composition of those products.

85. On information and belief, Zydus's 505(b)(2) Products will also include TAF prepared according to the process claimed in one or more of the TAF Process Patents. As described above, Gilead's extensive experience with TAF revealed that it was difficult to produce TAF on a commercial scale without using the inventions claimed in the TAF Process Patents. On information and belief based on the information presently known to Gilead, it is likely that Zydus utilizes the process claimed in one or more of the TAF Process Patents to produce Zydus's 505(b)(2) Products.

86. On information and belief, Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, is seeking approval to market Zydus's F/TAF 505(b)(2) Product for some or all of the same approved indications as DESCOVY®. On information and belief, the proposed label for Zydus's F/TAF 505(b)(2) Product will instruct physicians and healthcare providers to administer Zydus's F/TAF 505(b)(2) Product for, among other things, the treatment of HIV and HIV prevention in adults and pediatric patients.

87. On information and belief, Zydus FZE is seeking approval to market Zydus's TAF 505(b)(2) Product for some or all of the same approved indications as VEMLIDY®. On information and belief, Zydus's proposed label for Zydus's TAF 505(b)(2) Product will instruct physicians and healthcare providers to administer Zydus's TAF 505(b)(2) Product for, among other things, the treatment of chronic HBV infection in adults with compensated liver disease.

88. Under the Hatch-Waxman Act, an owner of a patented medicine must file an action in federal court within 45 days of receiving a Paragraph IV notice letter in order to receive certain benefits under the Act, including a stay of approval of the 505(b)(2) application for up to 30 months during the pendency of litigation, as appropriate, pursuant to 21 U.S.C. § 355(c)(3)(C). Having attempted to negotiate access to Zydus's 505(b)(2) Applications and

other information that would assist it in further evaluating infringement, Gilead is not aware of any other means of obtaining information regarding Zydus's 505(b)(2) Products within the 45-day statutory period. In the absence of such information, Gilead resorts to the judicial process and the aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its belief, and to present to the Court evidence, that Zydus has and will infringe certain claims of the Patents-in-Suit. Gilead files this action before the expiration of forty-five days from the date of Gilead's receipt of Zydus's Notice Letters.

## CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,754,065 BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION

89. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

90. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '065 Patent constituted a statutory act of infringement of at least one claim of the '065 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

91. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '065 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2)

Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

92. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the ’065 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the ’065 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

93. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’065 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. Zydus's F/TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's F/TAF 505(b)(2) Product before the expiration of the ’065 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the ’065 Patent.

94. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy

and imminent risk of infringement of the ’065 Patent because FDA approval and Zydus’s commercialization of Zydus’s F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s F/TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for approval of Zydus’s F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

95. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus’s manufacture, use, offer for sale, sale and/or importation of Zydus’s F/TAF 505(b)(2) Product in or into the United States prior to expiration of the ’065 Patent, and Zydus’s inducement of such conduct, will infringe the ’065 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

96. If Zydus’s marketing and sale of Zydus’s F/TAF 505(b)(2) Product prior to expiration of the ’065 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT II:**
**INFRINGEMENT OF U.S. PATENT NO. 9,296,769**
**BY ZYDUS’S F/TAF 505(B)(2) PRODUCT & APPLICATION**

97. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

98. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '769 Patent constituted a statutory act of infringement of at least one claim of the '769 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

99. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '769 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

100. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '769 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import the Zydus F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '769 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

101. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’769 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s F/TAF 505(b)(2) Application to FDA, seeking to market Zydus’s F/TAF 505(b)(2) Product in the United States upon approval. Zydus’s F/TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s F/TAF 505(b)(2) Product before the expiration of the ’769 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s F/TAF 505(b)(2) Product prior to the expiration of the ’769 Patent.

102. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’769 Patent because FDA approval and Zydus’s commercialization of Zydus’s F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s F/TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for approval of Zydus’s F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

103. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '769 Patent, and Zydus's inducement of such conduct, will infringe the '769 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

104. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '769 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT III:**
**INFRINGEMENT OF U.S. PATENT NO. 9,777,028**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION**

105. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

106. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '028 Patent constituted a statutory act of infringement of at least one claim of the '028 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 7, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

107. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '028 Patent under 35 U.S.C. § 271(a), including but not limited to claim 7, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2)

Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

108. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '028 Patent under 35 U.S.C. § 271(b), including but not limited to claim 7, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '028 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's F/TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's F/TAF Notice Letter. This also entitles Gilead to a declaratory judgment and associated relief.

109. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '028 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA, seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. Zydus's F/TAF Notice Letter states that Zydus is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's F/TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire before the '028 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to

offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the '028 Patent.

110. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '028 Patent because FDA approval and Zydus's commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

111. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '028 Patent, and Zydus's inducement of such conduct, will infringe the '028 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

112. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '028 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT IV:
INFRINGEMENT OF U.S. PATENT NO. 8,664,386
BY ZYDUS'S F/TAF 505(B)(2) PRODUCT**

113. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

114. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '386 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is made by the process claimed in the '386 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

115. Upon information and belief, Zydus has knowledge of the '386 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's F/TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's F/TAF Notice Letter.

116. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '386 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA, seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. Zydus's F/TAF Notice Letter states that

Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's F/TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the '386 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the '386 Patent.

117. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '386 Patent because FDA approval and Zydus's commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

118. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's F/TAF 505(b)(2) Product will infringe the '386 Patent pursuant to at least 35 U.S.C. § 271(g).

119. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '386 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT V:**
**INFRINGEMENT OF U.S. PATENT NO. 9,029,534**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT**

120. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

121. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '534 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is made by the process claimed in the '534 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

122. Upon information and belief, Zydus has knowledge of the '534 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's F/TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's F/TAF Notice Letter.

123. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’534 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s F/TAF 505(b)(2) Application to FDA, seeking to market Zydus’s F/TAF 505(b)(2) Product in the United States upon approval. Zydus’s F/TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s F/TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the ’534 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s F/TAF 505(b)(2) Product prior to the expiration of the ’534 Patent.

124. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’534 Patent because FDA approval and Zydus’s commercialization of Zydus’s F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s F/TAF 505(b)(2) Application with Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for

approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

125. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's F/TAF 505(b)(2) Product will infringe the '534 Patent pursuant to at least 35 U.S.C. § 271(g).

126. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '534 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT VI:**
**INFRINGEMENT OF U.S. PATENT NO. 9,346,841**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT**

127. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

128. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '841 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is made by the process claimed in the '841 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

129. Upon information and belief, Zydus has knowledge of the ’841 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus’s infringement as part of Gilead’s efforts to obtain access to Zydus’s F/TAF 505(b)(2) Application and related manufacturing information after receiving Zydus’s F/TAF Notice Letter.

130. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’841 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s F/TAF 505(b)(2) Application to FDA seeking to market Zydus’s F/TAF 505(b)(2) Product in the United States upon approval. Zydus’s F/TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s F/TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the ’841 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s F/TAF 505(b)(2) Product prior to the expiration of the ’841 Patent.

131. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’841 Patent because FDA approval and Zydus’s commercialization of Zydus’s F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including

505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application with Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

132. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's F/TAF 505(b)(2) Product will infringe the '841 Patent pursuant to at least 35 U.S.C. § 271(g).

133. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '841 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VII:<br>INFRINGEMENT OF U.S. PATENT NO. 9,676,804<br>BY ZYDUS'S F/TAF 505(B)(2) PRODUCT

134. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

135. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '804 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's F/TAF 505(b)(2) Product is made by the process claimed in

the ’804 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus’s F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

136. Upon information and belief, Zydus has knowledge of the ’804 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus’s infringement as part of Gilead’s efforts to obtain access to Zydus’s F/TAF 505(b)(2) Application and related manufacturing information after receiving Zydus’s F/TAF Notice Letter.

137. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’804 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s F/TAF 505(b)(2) Application to FDA seeking to market Zydus’s F/TAF 505(b)(2) Product in the United States upon approval. Zydus’s F/TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s F/TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the ’804 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s F/TAF 505(b)(2) Product prior to the expiration of the ’804 Patent.

138. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’804 Patent because FDA approval and Zydus’s

commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

139. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's F/TAF 505(b)(2) Product will infringe the '804 Patent pursuant to at least 35 U.S.C. § 271(g).

140. If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '804 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT VIII:**
**INFRINGEMENT OF U.S. PATENT NO. 12,629,338**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION**

141. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

142. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF

505(b)(2) Product in or into the United States before the expiration of the ’338 Patent constitutes a statutory act of infringement of at least one claim of the ’338 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

143. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus’s F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the ’338 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus’s F/TAF 505(b)(2) Product in the United States or by importing Zydus’s F/TAF 505(b)(2) Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

144. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus’s F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the ’338 Patent in violation of 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus’s F/TAF 505(b)(2) Product in the United States, or to import Zydus’s F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the ’338 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

145. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’338 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and

Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA, seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the '338 Patent.

146. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '338 Patent because FDA approval and Zydus's commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

147. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '338 Patent will infringe the '338 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b). If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '338 Patent and all other relevant

exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT IX:**
**INFRINGEMENT OF U.S. PATENT NO. 12,648,911**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION**

148. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

149. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '911 Patent constitutes a statutory act of infringement of at least one claim of the '911 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

150. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will actively induce infringement or contribute to infringement of at least one claim of the '911 Patent under 35 U.S.C. §§ 271(b) and (c), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import Zydus's F/TAF 505(b)(2) Product into the United States.

151. For example, on information and belief, upon FDA approval, the prescribing information for Zydus's F/TAF 505(b)(2) Product will direct, instruct, and/or encourage providers to infringe at least one claim of the '911 Patent in violation of 35 U.S.C. § 271(b), and

prescribers will administer Zydus's F/TAF 505(b)(2) Product according to the prescribing information.

152. On information and belief, upon FDA approval, Zydus's F/TAF 505(b)(2) Product will be offered for sale or sold for use in the methods claimed in the '911 Patent, constitute a material part of the invention claimed in the '911 Patent, and have no substantial non-infringing uses, in violation of 35 U.S.C. § 271(c). Upon information and belief, Zydus has knowledge of the '911 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

153. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '911 Patent under 35 U.S.C. §§ 271(b) and (c). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the '911 Patent.

154. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '911 Patent because FDA approval and Zydus's commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including

505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

155. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '911 Patent will infringe the '911 Patent pursuant to at least 35 U.S.C. §§ 271(b) and/or (c). If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '911 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT X:**
**INFRINGEMENT OF U.S. PATENT NO. 12,661,323**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION**

156. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

157. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '323 Patent constitutes a statutory act of infringement of at least one claim of the '323 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

158. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '323 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

159. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '323 Patent in violation of 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '323 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

160. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '323 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's F/TAF 505(b)(2) Application to FDA seeking to market Zydus's F/TAF 505(b)(2) Product in the United States upon approval. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to

import into the United States or to offer to sell, sell, or use within the United States Zydus's F/TAF 505(b)(2) Product prior to the expiration of the '323 Patent.

161. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '323 Patent because FDA approval and Zydus's commercialization of Zydus's F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's F/TAF 505(b)(2) Application and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

162. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '323 Patent will infringe the '323 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b). If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '323 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XI:**
**INFRINGEMENT OF U.S. PATENT NO. 12,678,408**
**BY ZYDUS'S F/TAF 505(B)(2) PRODUCT & APPLICATION**

163. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

164. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States before the expiration of the '408 Patent constitutes a statutory act of infringement of at least one claim of the '408 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

165. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '408 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's F/TAF 505(b)(2) Product in the United States or by importing Zydus's F/TAF 505(b)(2) Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

166. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's F/TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '408 Patent in violation of 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's F/TAF 505(b)(2) Product in the United States, or to import Zydus's F/TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has

knowledge of the ’408 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

167. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’408 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s F/TAF 505(b)(2) Application to FDA, seeking to market Zydus’s F/TAF 505(b)(2) Product in the United States upon approval. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s F/TAF 505(b)(2) Product prior to the expiration of the ’408 Patent.

168. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’408 Patent because FDA approval and Zydus’s commercialization of Zydus’s F/TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s F/TAF 505(b)(2) Application and Zydus’s systematic attempts to meet the applicable regulatory requirements for approval of Zydus’s F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

169. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '408 Patent will infringe the '408 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b). If Zydus's marketing and sale of Zydus's F/TAF 505(b)(2) Product prior to expiration of the '408 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XII:**
**INFRINGEMENT OF U.S. PATENT NO. 8,754,065**
**BY ZYDUS'S TAF 505(B)(2) PRODUCT & APPLICATION**

170. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

171. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's TAF 505(b)(2) Product in or into the United States before the expiration of the '065 Patent constituted a statutory act of infringement of at least one claim of the '065 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

172. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '065 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2)

Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

173. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '065 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's TAF 505(b)(2) Product in the United States, or to import Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '065 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

174. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '065 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's TAF 505(b)(2) Application to FDA, seeking to market Zydus's TAF 505(b)(2) Product in the United States upon approval. Zydus's TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's TAF 505(b)(2) Product before the expiration of the '065 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's TAF 505(b)(2) Product prior to the expiration of the '065 Patent.

175. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy

and imminent risk of infringement of the ’065 Patent because FDA approval and Zydus’s commercialization of Zydus’s TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for approval of Zydus’s TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

176. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus’s manufacture, use, offer for sale, sale and/or importation of Zydus’s TAF 505(b)(2) Product in or into the United States prior to expiration of the ’065 Patent, and Zydus’s inducement of such conduct, will infringe the ’065 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

177. If Zydus’s marketing and sale of Zydus’s TAF 505(b)(2) Product prior to expiration of the ’065 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT XIII: INFRINGEMENT OF U.S. PATENT NO. 9,296,769 BY ZYDUS’S TAF 505(B)(2) PRODUCT & APPLICATION

178. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

179. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's TAF 505(b)(2) Product in or into the United States before the expiration of the '769 Patent constituted a statutory act of infringement of at least one claim of the '769 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

180. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '769 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2) Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

181. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '769 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's TAF 505(b)(2) Product in the United States, or to import Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '769 Patent and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

182. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’769 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s TAF 505(b)(2) Application to FDA, seeking to market Zydus’s TAF 505(b)(2) Product in the United States upon approval. Zydus’s TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s TAF 505(b)(2) Product before the expiration of the ’769 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s TAF 505(b)(2) Product prior to the expiration of the ’769 Patent.

183. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’769 Patent because FDA approval and Zydus’s commercialization of Zydus’s TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for approval of Zydus’s TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

184. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale and/or importation of Zydus's TAF 505(b)(2) Product in or into the United States prior to expiration of the '769 Patent, and Zydus's inducement of such conduct, will infringe the '769 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

185. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '769 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XIV:**
**INFRINGEMENT OF U.S. PATENT NO. 9,777,028**
**BY ZYDUS'S TAF 505(b)(2) PRODUCT & APPLICATION**

186. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

187. On information and belief based on the information presently available to Gilead, Zydus's submission of Zydus's TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's TAF 505(b)(2) Product in or into the United States before the expiration of the '028 Patent constituted a statutory act of infringement of at least one claim of the '028 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 7, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

188. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '028 Patent under 35 U.S.C. § 271(a), including but not limited to claim 7, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2)

Product into the United States. This entitles Gilead to a declaratory judgment and associated relief.

189. On information and belief based on the information presently available to Gilead, upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will also actively induce infringement of at least one claim of the '028 Patent under 35 U.S.C. § 271(b), including but not limited to claim 7, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Zydus's TAF 505(b)(2) Product in the United States, or to import Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, Zydus has knowledge of the '028 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's TAF Notice Letter. This also entitles Gilead to a declaratory judgment and associated relief.

190. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '028 Patent under 35 U.S.C. §§ 271(a) and (b). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's TAF 505(b)(2) Application to FDA, seeking to market Zydus's TAF 505(b)(2) Product in the United States upon approval. Zydus's TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire before the '028 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell,

sell, or use within the United States Zydus's TAF 505(b)(2) Product prior to the expiration of the '028 Patent.

191. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '028 Patent because FDA approval and Zydus's commercialization of Zydus's TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

192. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's manufacture, use, offer for sale, sale and/or importation of Zydus's TAF 505(b)(2) Product in or into the United States prior to expiration of the '028 Patent, and Zydus's inducement of such conduct, will infringe the '028 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

193. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '028 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XV:**
**INFRINGEMENT OF U.S. PATENT NO. 8,664,386**
**BY ZYDUS'S TAF 505(B)(2) PRODUCT**

194. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

195. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '386 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is made by the process claimed in the '386 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

196. Upon information and belief, Zydus has knowledge of the '386 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's TAF Notice Letter.

197. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '386 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's TAF 505(b)(2) Application to FDA, seeking to market Zydus's TAF 505(b)(2) Product in the United States upon approval. Zydus's TAF Notice Letter states that

Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the '386 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's TAF 505(b)(2) Product prior to the expiration of the '386 Patent.

198. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '386 Patent because FDA approval and Zydus's commercialization of Zydus's TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

199. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's TAF 505(b)(2) Product will infringe the '386 Patent pursuant to at least 35 U.S.C. § 271(g).

200. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '386 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XVI:**
**INFRINGEMENT OF U.S. PATENT NO. 9,029,534**
**BY ZYDUS'S TAF 505(B)(2) PRODUCT**

201. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

202. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '534 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is made by the process claimed in the '534 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

203. Upon information and belief, Zydus has knowledge of the '534 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's TAF Notice Letter.

204. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’534 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s TAF 505(b)(2) Application to FDA, seeking to market Zydus’s TAF 505(b)(2) Product in the United States upon approval. Zydus’s TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the ’534 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s TAF 505(b)(2) Product prior to the expiration of the ’534 Patent.

205. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’534 Patent because FDA approval and Zydus’s commercialization of Zydus’s TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt” and “90 percent of standard non-NME original NDA submissions within 10 months of receipt”). Zydus’s actions, including but not limited to Zydus FZE’s submission of Zydus’s TAF 505(b)(2) Application with Paragraph IV Certification and Zydus’s systematic attempts to meet the applicable regulatory requirements for

approval of Zydus's TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

206. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's TAF 505(b)(2) Product will infringe the '534 Patent pursuant to at least 35 U.S.C. § 271(g).

207. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '534 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XVII:**
**INFRINGEMENT OF U.S. PATENT NO. 9,346,841**
**BY ZYDUS'S TAF 505(B)(2) PRODUCT**

208. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

209. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '841 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is made by the process claimed in the '841 Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

210. Upon information and belief, Zydus has knowledge of the ’841 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus’s infringement as part of Gilead’s efforts to obtain access to Zydus’s TAF 505(b)(2) Application and related manufacturing information after receiving Zydus’s TAF Notice Letter.

211. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the ’841 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus’s TAF 505(b)(2) Application to FDA, seeking to market Zydus’s TAF 505(b)(2) Product in the United States upon approval. Zydus’s TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus’s TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the ’841 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus’s TAF 505(b)(2) Product prior to the expiration of the ’841 Patent.

212. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the ’841 Patent because FDA approval and Zydus’s commercialization of Zydus’s TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA’s commitment to “[r]eview and act on 90 percent of priority non-NME original NDA submissions [including

505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's TAF 505(b)(2) Application with Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

213. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's TAF 505(b)(2) Product will infringe the '841 Patent pursuant to at least 35 U.S.C. § 271(g).

214. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '841 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT XVIII:**
**INFRINGEMENT OF U.S. PATENT NO. 9,676,804**
**BY ZYDUS'S TAF 505(B)(2) PRODUCT**

215. Each of the preceding paragraphs 1-88 is incorporated as if fully set forth herein.

216. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Zydus's TAF 505(b)(2) Application, Zydus will infringe at least one claim of the '804 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Zydus's TAF 505(b)(2) Product in the United States or by importing Zydus's TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is made by the process claimed in the '804

Patent. Upon information and belief, the product made by the patented process during the manufacture of Zydus's TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

217. Upon information and belief, Zydus has knowledge of the '804 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Zydus's infringement as part of Gilead's efforts to obtain access to Zydus's TAF 505(b)(2) Application and related manufacturing information after receiving Zydus's TAF Notice Letter.

218. A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Zydus regarding infringement of the '804 Patent under 35 U.S.C. § 271(g). Zydus FZE, acting in concert with Zydus Ltd. and Zydus USA, has submitted Zydus's TAF 505(b)(2) Application to FDA seeking to market Zydus's TAF 505(b)(2) Product in the United States upon approval. Zydus's TAF Notice Letter states that Zydus FZE is seeking to obtain approval to engage in the commercial manufacture, use, or sale of Zydus's TAF 505(b)(2) Product before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the '804 Patent. On information and belief, Zydus has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Zydus's TAF 505(b)(2) Product prior to the expiration of the '804 Patent.

219. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '804 Patent because FDA approval and Zydus's

commercialization of Zydus's TAF 505(b)(2) Product may occur as early as this winter, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Zydus's actions, including but not limited to Zydus FZE's submission of Zydus's TAF 505(b)(2) Application with a Paragraph IV Certification and Zydus's systematic attempts to meet the applicable regulatory requirements for approval of Zydus's TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

220. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Zydus's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Zydus's TAF 505(b)(2) Product will infringe the '804 Patent pursuant to at least 35 U.S.C. § 271(g).

221. If Zydus's marketing and sale of Zydus's TAF 505(b)(2) Product prior to expiration of the '804 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Gilead respectfully requests the following relief:

(a) a judgment that Zydus has infringed the TAF Hemi Patents, TAF Sesqui Patent, and TAF Formulation Patents under 35 U.S.C. § 271(e)(2), either literally or under the doctrine of equivalents;

(b) a judgment pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Zydus's F/TAF 505(b)(2) Application under § 505(b) of the Federal Food, Drug and

Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Formulation Patents, including any applicable exclusivity period to which Gilead is or becomes entitled;

(c) a judgment pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Zydus's TAF 505(b)(2) Application under § 505(b) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the TAF Hemi Patents and TAF Sesqui Patent, including any applicable exclusivity period to which Gilead is or becomes entitled;

(d) a judgment declaring that the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's F/TAF 505(b)(2) Product would constitute infringement of the Patents-in-Suit, or induce such conduct, pursuant to 35 U.S.C. § 271(a), (b), (c), and/or (g), either literally or under the doctrine of equivalents, and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

(e) a judgment declaring that the commercial manufacture, use, offer for sale, sale and/or importation of Zydus's TAF 505(b)(2) Product would constitute infringement of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Process Patents, or induce such conduct, pursuant to 35 U.S.C. § 271(a), (b), and/or (g), either literally or under the doctrine of equivalents, and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

(f) a judgment permanently enjoining Zydus, its affiliates, subsidiaries, and each of its officers, agents, attorneys and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Zydus's F/TAF 505(b)(2) Product until the day after the

expiration of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled, and from otherwise infringing one or more claims of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(g) a judgment permanently enjoining Zydus, its affiliates, subsidiaries, and each of its officers, agents, attorneys and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Zydus's TAF 505(b)(2) Product until the day after the expiration of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Process Patents, including any applicable exclusivity period to which Gilead is or becomes entitled, and from otherwise infringing one or more claims of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Process Patents, either literally or under the doctrine of equivalents;

(h) damages or other monetary relief under 35 U.S.C. § 271(a), (b), (c), (g), and (e)(4)(c) and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Zydus engages in commercial manufacture, use, offers to sell, or sale within the United States, or importation into the United States, of Zydus's F/TAF 505(b)(2) Product prior to the latest expiration date of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled;

(i) damages or other monetary relief under 35 U.S.C. § 271(a), (b), (g), and (e)(4)(c) and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Zydus engages in commercial manufacture, use, offers to sell, or sale within the United States, or importation into the United States of Zydus's TAF 505(b)(2) Product prior to the latest expiration date of the TAF Hemi Patents, TAF Sesqui Patent, and TAF Process Patents, including any applicable exclusivity period to which Gilead is or becomes entitled;

(j) an order that this case is exceptional;

(k) an award of Gilead's costs, expenses, reasonable attorneys' fees and such other relief as the Court deems just and proper pursuant to 35 U.S.C. § 285; and

(l) any such other and further relief as the Court may deem just and proper.

Dated: August 28, 2026

s/ *Charles H. Chevalier*
Charles H. Chevalier
Michael V. Caracappa
Christian Villatoro
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102-5310
cchevalier@fbtgibbons.com
mcaracappa@fbtgibbons.com
cvillatoro@fbtgibbons.com

*Of Counsel*:

Vinita C. Ferrera
Emily R. Whelan
Timothy A. Cook
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Vinita.Ferrera@wilmerhale.com
Emily.Whelan@wilmerhale.com
Tim.Cook@wilmerhale.com

*Attorneys for Plaintiff*
*Gilead Sciences, Inc.*